383 A.2d 946

**Ruth MARSHALL and William Marshall, Jr.,**

**v.**

**Virginia POWERS and Gladys V. Grogan.**

**Appeal of Gladys V. GROGAN.**

Supreme Court of Pennsylvania.

Argued Jan. 13, 1978.

Decided March 23, 1978.

Rearguments Denied May 15, 1978.

LaBrum & Doak, James M. Marsh, Philadelphia, for appellants.

Wilfred F. Lorry, Philadelphia, for appellees.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX, MANDERINO and LARSEN, JJ.

## OPINION

PER CURIAM.

In this case, the Court of Common Pleas of Philadelphia granted a motion by the plaintiff-appellees to strike new matter filed by the defendant-appellant which raised as a defense a release which allegedly discharged defendant-appellant from liability. The motion to strike alleged the

release was obtained in violation of the Act of June 9, 1972, P.L. 359, No. 97, § 1, 12 P.S. § 1630 (Supp.1977–78). The defendant-appellant appealed from the order granting the motion to strike to the Superior Court. The Superior Court affirmed per curiam. The defendant-appellant filed a petition for allowance of appeal and we granted the petition.

The order of the Court of Common Pleas is interlocutory, see *Adcox v. Pennsylvania Mfrs. Ass'n Cas. Ins. Co.*, 419 Pa. 170, 213 A.2d 366 (1965), and hence, the Superior Court erred in entertaining an appeal therefrom in the absence of a certification pursuant to Section 501(b) of the Appellate Court Jurisdiction Act, Act of July 31, 1970, P.L. 673, No. 223, § 501(b), 17 P.S. 211.501(b) (Supp.1977–78).

Accordingly, the order of the Superior Court is vacated and the record is remanded to the Court of Common Pleas with a procedendo.

We express no view on the merits of the issue which resulted in the Court of Common Pleas order granting the motion to strike.

LARSEN, J., filed a dissenting opinion in which MANDERINO, J., joins.

LARSEN, Justice, dissenting.

I dissent. When we granted allocatur in this case, we agreed to decide the merits of the case. The majority now wants to change horses in the middle of the stream. I will stick with our original horse and address myself to the merits.

Ruth Marshall was injured on December 10, 1972, while riding as a passenger in a car driven by Virginia Powers when the latter's car collided with a car operated by Gladys Grogan. Ruth Marshall was treated at a hospital for a fractured ankle and released the same day. On December 18, 1972, eight days after the accident and hospital treatment, Ruth Marshall and her husband, William Marshall, Jr., executed a general release discharging Grogan from liability in consideration for the payment of eight hundred dollars in cash and medical expenses for one year.

On October 31, 1974, the Marshalls filed suit in Philadelphia County Court of Common Pleas against Grogan and Powers. Grogan filed an answer and raised as a new matter the December 18, 1972 release which discharged Grogan from liability. The Marshalls filed a motion to strike Grogan's new matter, alleging that the release was obtained in violation of the Act of June 9, 1972, P.L. 359, No. 97, § 1, 12 P.S. § 1630(a). The trial court granted the Marshalls' motion to strike and thus invalidated the release. Grogan appealed to the Superior Court which affirmed the lower court per curiam. On October 18, 1976, this Court granted Grogan's petition for allowance of appeal of the Superior Court's decision.

The sole question before us is whether an injured person like Ruth Marshall, who immediately following an accident was treated at a hospital as an outpatient for a few hours and then, eight days later, signs a general release of liability, comes within the purview and protection of Section 1630(a) which states in pertinent part:

"No person whose interest is or may become adverse to a person injured who is *confined* to a hospital . . . *as a patient* shall, within fifteen days from the date of the occurrence causing the person's injury: . . . (ii) obtain or attempt to obtain a general release of liability from the injured patient . . .." (Emphasis added)

I answer in the affirmative; the Marshalls' release is invalidated by Section 1630(a).

In the first of Grogan's two contentions, Grogan asserts that Section 1630(a) is not applicable because Ruth Marshall was an outpatient at the hospital and, hence, was never "confined . . . as a patient". *Webster's New International Dictionary* (1961) defines "confine" as "to keep from leaving accustomed quarters . . . under pressure of infirmity . . ."; *The American Heritage of the English Language* (1973) defines "confine" as "to enclose within bounds; limit or restrict"; and *Black's Law Dictionary* (4th Edition, 1968) defines "confinement" as "restraint by sickness . . .." Thus, one who, as a result of an injury or

illness, appears at a hospital for treatment and/or a checkup and remains there until released or discharged has been confined to the hospital for the purposes of Section 1630(a). The Act does not differentiate between inpatients vs. outpatients and as Grogan concedes that Ruth Marshall was an outpatient, I conclude that Ruth Marshall was "confined . . . as a patient" to the hospital.

Grogan's second contention is that assuming confinement as a patient, Section 1630(a) is still not applicable since the release was not executed during Ruth Marshall's confinement at the hospital. A reading of Sections 1630(a) and (c) indicates that the legislature did not intend that a release should be invalidated under Section 1630(a) only if it was executed *during an injured person's confinement in a hospital.* Section 1630(c), which pertains to attorneys obtaining contingent fee agreements from injured persons after the occurrence of injuries, provides:

"Where a person is injured and confined to a hospital or sanitarium due to said injuries, no attorney, *during the first fifteen days of said person's confinement,* shall enter or attempt to enter into an agreement relating to compensation wholly or partly on a contingent basis with said person in connection with his injuries." (Emphasis added).

In Section 1630(c), the legislature explicitly stated that this section was applicable only if the document in question was signed "during the first fifteen days of said person's confinement". By contrast, Section 1630(a) states that this section was applicable for fifteen days "from the date of the occurrence causing the person's injury". If the legislature intended for Section 1630(a) to be applicable only if the injured party signed a release while confined in a hospital, it would have utilized the same language employed in Section 1630(c).[1]

The order of the Superior Court should be affirmed.

MANDERINO, J., joins in this Dissenting Opinion.

[1] There is an important reason for the difference in the language employed in Section 1630(a) as opposed to Section 1630(c). Section

1630(a) is a broader protection because it protects against the total extinction of an injured person's complete legal rights ("release"); Section 1630(c) on the other hand, is narrower and more limited in scope (signing during the person's hospital confinement) because it does not concern the extinction of an injured person's rights.